The STATE of Ohio, Appellee,

v.

GAINES, Appellant.

[Cite as *State v. Gaines* (1992), 82 Ohio App.3d 467.]

Court of Appeals of Ohio,
Clinton County.

No. CA91–12–026.

Decided Sept. 14, 1992.

468

*Ronald C. Carey,* Clinton County Prosecuting Attorney, for appellee.

*Sheets, Ernst & Diehl* and *James E. Sheets,* for appellant.

WILLIAM W. YOUNG, Judge.

Defendant-appellant, Kenneth Gaines, appeals a decision of the Clinton County Court of Common Pleas ordering the forfeiture of property pursuant to R.C. 2933.41.

The record indicates that on June 24, 1988, the Clinton County Grand Jury indicted appellant on three counts of dogfighting and two counts of trafficking in marijuana. After pleading guilty to federal marijuana charges, appellant entered into a plea bargain in which he agreed to plead guilty to two counts of dogfighting and accepted a forfeiture of cash and any other personal property related to illegal dogfighting in exchange for the state's dismissal of the remaining charges.

The trial court ordered the forfeiture of all of the equipment allegedly used in the dog fights. It also ordered the forfeiture of $5,851 cash found on

appellant's property as well as numerous guns and other items of personal property on the premises.

Appellant appealed that decision, and this court reversed the trial court's judgment as it related to the forfeiture order in *State v. Gaines* (1990), 64 Ohio App.3d 230, 580 N.E.2d 1158. We held that the trial court had failed to make any findings that the cash or the guns were used in the commission of the offense. The cause was remanded for a determination of which items specifically had "anything to do with the illegal fighting of dogs."

Following remand, the trial court conducted a hearing on July 12, 1991. At that hearing, the prosecution called Sandra Rowland of the Humane Society of the United States as an expert witness. Rowland explained that she had received training in investigating dogfighting cases for the Humane Society and that she had participated in several such investigations. She explained that she had attended seminars on the topic and that through her experience with the Humane Society, she had become familiar with the equipment and drugs commonly used in dogfighting. Rowland identified numerous items found on appellant's property, including veterinary drugs and equipment such as collars, cages, and treadmills. She expressed the opinion that these items had been used by appellant for dogfighting.

Greg Clark, an undercover officer with the Clermont County Sheriff's Department, also testified. He stated that appellant sold dogs for fighting purposes on a cash basis and that he, Clark, had in fact negotiated such a sale with appellant using marked bills. Clark described the equipment that he observed on appellant's property and testified that appellant told him that when the dogs could not fight up to expectations, they were routinely shot.

Tim Smith, a Deputy Sheriff of Clinton County, testified that the $5,851 in cash was found in a safe on appellant's property, accompanied by drugs that were used to treat injured dogs. Smith also testified to the presence of loaded guns throughout appellant's residence.

Appellant called several witnesses to explain the presence of the cash and the guns on appellant's property. Appellant's daughter-in-law, Rosalie Gaines, testified that appellant was keeping the $5,851 in his safe for her and that it had no connection to any dogfighting operation. Similarly, several friends and relatives of appellant stated that they had kept their guns on appellant's property and that they had no knowledge of any dogfighting activity.

In an entry filed on November 27, 1991, the trial court ordered the forfeiture of the $5,851, the guns and numerous other items of personal property. Appellant brings the instant appeal, setting forth the following assignments of error:

Assignment of Error No. 1

"The trial court erred to the prejudice of the defendant/appellant in admitting opinion testimony regarding personal property having 'anything to do with the illegal fighting of dogs.'"

Assignment of Error No. 2

"The trial court erred to the prejudice of the defendant/appellant in finding a 'direct' connection between the cash and appellant's illegal dog fighting activities."

Assignment of Error No. 3

"The trial court erred to the prejudice of the defendant/appellant by ordering virtually all of the property forfeited against the manifest weight of the evidence."

■ Before we address appellant's assignments of error, we must address the state's contention that the appeal was not filed in a timely fashion. The court filed a decision on September 17, 1991, and on September 24, 1991, appellant filed a motion for findings of fact and conclusions of law pursuant to Civ.R. 52. The court filed its findings of fact and conclusions of law on November 14, 1991 and, as noted above, filed its final judgment entry on November 27, 1991. Appellant filed his notice of appeal on December 10, 1991. The state claims that, since the notice of appeal was filed more than thirty days after the September 17 decision, the appeal was not timely. See App.R. 4.

The state's argument is not well taken. Despite the state's assertions to the contrary, the court's decision of September 17, 1991 did not constitute its final judgment entry. The court did not enter judgment in accordance with its decision until November 27, 1991. Appellant's notice of appeal was filed within thirty days of that entry, and was therefore timely.

■ We now turn to appellant's assignments of error. In his first assignment of error, appellant argues that the trial court erred in admitting the opinion testimony of Sandra Rowland.

Evid.R. 702, governing expert testimony, provides as follows:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

A trial court has broad discretion in deciding whether to allow expert testimony, needing only to find that the particular witness will aid the trier of fact in its search for the truth. *Alexander v. Mt. Carmel Med. Ctr.* (1978), 56

Ohio St.2d 155, 159, 10 O.O.3d 332, 334, 383 N.E.2d 564, 566. Thus, in order to reverse the trial court's decision, we must find that it committed an abuse of discretion. *State v. Jones* (1981), 67 Ohio St.2d 244, 251, 21 O.O.3d 152, 157, 423 N.E.2d 447, 451. The term "abuse of discretion" means more than a mere error of law or judgment; it implies an attitude on the part of the trial court that is arbitrary, capricious, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

■ In the instant case, we find no abuse of discretion. The record indicates that Rowland had extensive experience in investigating dogfighting cases and that she had developed an expertise in identifying the items, including medications, that are used in dogfighting. She had received training with respect to dogfighting cases from her employer and had attended various seminars on the subject. Further, we note that she had been qualified to testify as an expert in previous dogfighting cases.

Appellant places special emphasis on the fact that Rowland had not received a college degree and did not receive training from a law enforcement agency. These considerations are not dispositive of the issue. The trial court had an ample basis upon which to find that Rowland's knowledge, experience and training rendered her competent to testify as an expert in dogfighting, despite these asserted deficiencies in her background. Accordingly, we find no error in the trial court's ruling, and appellant's first assignment of error is overruled.

■ In his second and third assignments of error, appellant in essence contends that the court's finding that the property forfeited was related to the illegal fighting of dogs was contrary to the manifest weight of the evidence. We recognize, as appellant notes, that forfeitures are not favored and that R.C. 2933.41 must be strictly construed. *State v. Lilliock* (1982), 70 Ohio St.2d 23, 24 O.O.3d 64, 434 N.E.2d 723. Nonetheless, a judgment of a trial court that is supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273; *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.[1]

R.C. 2933.41, governing forfeiture of contraband, provides in part as follows:

---

[1]. We note that forfeiture proceedings are civil in form and that the standard of proof is therefore by a preponderance of the evidence. See *State v. Gaines* (1990), 64 Ohio App.3d 230, 236, 580 N.E.2d 1158, 1161.

"(C) A person loses any right he may have to the possession, or the possession and ownership, of property if either of the following applies:

"(1) The property was the subject, or was used in a conspiracy or attempt to commit, or in the commission, of an offense other than a traffic offense, and such person is a conspirator, accomplice, or offender with respect to the offense."

In the case at bar, there was some competent, credible evidence to support the trial court's conclusion that the property in question was related to illegal dogfighting. We begin with the question of the $5,851 in cash. Officer Clark testified that appellant informed him that wagers on dog fights were made in cash and that he sold dogs for fighting on a cash basis. Clark also testified that he in fact purchased a dog with marked bills. Thus, the evidence established that the presence of large amounts of cash was consistent with a dogfighting operation. Though the cash found in the safe was not traceable to Clark's purchase, the money was found in a safe with dogfighting paraphernalia, namely medicine, that was identified at the hearing as being used in dogfighting. As such, the state presented some evidence that the cash was related to the offense.

Although Rosalie Gaines stated that the money was hers and that appellant was merely keeping it for her, the trial court specifically found her testimony to be untrustworthy. Rosalie stated that the money was part of a $13,000 overpayment to her from the Veterans' Administration. According to her testimony, she had given the money to appellant in 1986 and was in the process of repaying the government. She could not account for why the money was in cash, why it had taken her so long to repay the government, or why she had given the money to appellant rather than directly to the government. Under these circumstances, we find that the trial court reasonably found her testimony to be wholly devoid of credibility. Such questions of credibility are property left to the trial court and we will not disturb the court's decision. *Seasons Coal Co., supra.*

Similarly, there was competent, credible evidence relating the guns to the dogfighting offense. According to Clark's testimony, appellant told him that dogs that did not fight well were shot and buried on the premises. Further, Deputy Smith testified that it is a common practice for those associated in such operations to keep loaded guns about the premises to protect against law enforcement officers.

Several of appellant's friends and relatives testified that they had given appellant their guns to store and that they had no knowledge of any dogfighting on appellant's premises. However, the trial court found this testimony

not to be credible, as the witnesses were unable to cogently account for why they entrusted the guns with appellant or how they had remained oblivious to appellant's rather sizable dogfighting operation given their close relationship with appellant. While perhaps we would not have ruled in the same manner that the trial court did with respect to the guns, we cannot say that the trial court's decision was without an evidentiary foundation. As such, we cannot disturb the ruling of the trial court.

■ Finally, appellant makes the general assertion that much of the remainder of the personal property was not subject to forfeiture. Once again, we find that the trial court's decision was supported by competent, credible evidence. The medication and equipment, such as the collars and treadmills, were sufficiently identified as being used in the offense of dogfighting and were thus properly subject to forfeiture. Appellant's second and third assignments of error are therefore overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

WALSH, J., concurs.

JONES, P.J., dissents.

JONES, Presiding Judge, dissenting.

The "forfeiture" provisions permitted by R.C. 2933.41 *et seq.* are laudable, but I am concerned that some law enforcement agencies are seizing property to enhance their allocated budgetary funds in cases where the seized "contraband" is unrelated to a criminal act. It seems to be a convenient way to supplement the budget without involving the expenditure of tax money. The forfeiture of contraband involved in the sale of drugs, for example, helps the local police department and hurts the drug dealer. So far, well and good. It is crystal clear that a "cigar" speedboat, with speed capable of outrunning the U.S. Coast Guard, when used for the transportation of drugs to Florida coasts, constitutes contraband, in that it is directly related to the sale and distribution of illegal drugs. It is equally clear that the vehicle used by drug dealers to transport their filthy product from Florida to Cleveland can and should be seized by Ohio authorities when intercepted on I-75. The forfeiture concept becomes somewhat cloudy, however, with respect to criminal convictions where there is no direct connection with the property seized and the crime committed.

In the case *sub judice*, there is simply no direct connection between the seized firearms and the crime of dogfighting, or for that matter, the sale of

marijuana.[2] The lower court held: "This court is satisfied from the manner in which these firearms were distributed throughout the residence in a loaded condition that they were 'used in the commission of the offense' of possession with intent to distribute marijuana."

Does the trial judge believe the firearms were contraband because of "the manner in which these firearms were distributed throughout the residence," or because they were "in a loaded condition"? Property is subject to forfeiture under R.C. 2933.41 if the trial court determines "it is unlawful for the individual to acquire or possess the property, in light of its nature or the circumstances of the offender." *State v. Gaines* (1990), 64 Ohio App.3d 230, 236, 580 N.E.2d 1158, 1161. It is not illegal to possess loaded firearms and distribute them in various rooms of one's residence. The Second Amendment to the United States Constitution has not (yet) been abrogated.

The only possible connection between the firearms seized as contraband and the crime of dogfighting is appellant's statement to undercover agents that "dogs which did not perform were destroyed by shooting them." Perhaps the gun actually used to shoot a cowardly fighting dog might be contraband, but even that is doubtful. In any event, there is absolutely no evidence that the seizure of the firearms had "anything to do with the illegal fighting of dogs" as required by our remand in *Gaines*. We previously held that "it was incorrect to order a forfeiture of the guns unless it is demonstrated that appellant used them in connection with the violation of R.C. 959.16." *Id.*, 64 Ohio App.3d at 237, 580 N.E.2d at 1162. Now, as then, this language aptly reflects the erroneous nature of the trial court's order. The court's order declaring forfeiture of the guns should be reversed and final judgment entered for appellant.

I accordingly dissent.

---

2. We reversed the initial order of forfeiture and remanded the case to the trial court "for a determination of which items seized during the June 16, 1988 search had 'anything to do with the illegal fighting of dogs.'" The remand neither required nor permitted the lower court to consider the separate conviction in federal court with respect to the marijuana charge. Accordingly, the trial court's finding that the firearms are somehow related to the federal charge is not germane to the remand.