[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division. That court terminated the parental rights of appellant, Richard C., the natural and legal father of Dylan R., born January 25, 2001, and awarded permanent custody of Dylan to appellee, Lucas County Children Services ("LCCS").
{¶ 2} Pursuant to the procedure outlined by the United States Supreme Court in Anders v. California (1967), 386 U.S. 738, appellant's appointed counsel filed a motion to withdraw, accompanied by a brief with five proposed assignments of error and an affidavit in which he avers that after careful review of the record and of existing case law, he believes there are no arguable issues for appeal. Appellate counsel also attests that he sent appellant a copy of his motion to withdraw as well as a copy of the brief containing the proposed assignments of error thereby providing appellant with an opportunity to file any additional arguments he might want this court to consider. Appellant did not file a separate brief or any additional arguments.
{¶ 3} The five proposed assignments of error presented in the Anders brief are:
{¶ 4} "1. The trial court erred in qualifying Shelly Faulkenberg as an expert in early child development and in parent training. Tr. at 52-7.
{¶ 5} "2. The Lucas County Children Services Board failed to comply with R.C. 2151.412 with regard to the initial and many amended case plans, most specifically with regard to the February 7, 2001 amended case plan and the `original' case plan filed on February 21, 2001.
{¶ 6} "3. Mr. [C.] was not afforded effective assistance of counsel.
{¶ 7} "4. The manifest weight of the evidence does not support an award of permanent custody.
{¶ 8} "5. The Lucas County Children Services Board failed to make reasonable efforts to return the child to Mr. [C.]."
{¶ 9} Pursuant to our responsibilities under Anders, we have independently reviewed the entire record on appeal and conclude, as did appointed appellate counsel, that there are no arguably meritorious issues for appellate review and that this cause is wholly frivolous. State v. Duncan (1978), 57 Ohio App.2d 93, 93-94.
{¶ 10} This case began on February 5, 2001 when LCCS filed a complaint in dependency and neglect and a motion for a shelter care hearing. The complaint contains allegations that appellant, then the alleged[1] father of Dylan, was a minor and that there were concerns as to whether Dylan's mother, who is mentally retarded, was able to independently parent her child. Dylan was subsequently adjudicated a dependent child. LCCS filed its motion for permanent custody on December 11, 2001. The court held a hearing on this motion on June 25, 2002. Based upon the evidence adduced at that hearing, the trial court granted the motion and awarded permanent custody of Dylan to LCCS. This appeal followed[2].
{¶ 11} The following facts are relevant to the disposition of this cause. Neither of Dylan's parents were employed either before or at the time of his birth; thus, their only income was the mother's supplemental security income ("SSI") benefits. Terry Stricklin, the mother's case manager at the Lucas County Board of Retardation, testified that the couple did not make good decisions concerning their basic needs. For example, they purchased a Play Station rather than paying their rent, and were essentially homeless and living with relatives at the time of Dylan's birth. In addition, the child's mother frequently engaged in verbal and/or physical aggression against appellant. However, even after Dylan was removed from their care, the parents continued their relationship and shared the same residence.
{¶ 12} It was determined that appellant has an I.Q. of 73 and could independently parent his child if he mastered the appropriate parenting and family management skills. To achieve that goal, appellant's case plans included parenting classes and classes in which he could learn family management skills, such as budgeting and scheduling and keeping appointments. Appellant was also referred to Connecting Point's Independent Living Program in order to fulfill the requirement that he find independent, safe and stable housing. He was also provided with a "Job Coach" through Connecting Point to aid him in finding employment.
{¶ 13} At the hearing on this matter, it was revealed that appellant failed to obtain independent housing, was still residing with Dylan's mother and that the police responded to several domestic violence calls from the parents' residence. Further, when the parents visited Dylan, they were more interested in each other than their child. This led to concerns about the safety of Dylan as the child became more mobile.
{¶ 14} As of June 25, 2002, appellant had been employed at a movie theater for about six weeks. However, he was fired from his previous job for stealing and had, on prior occasions, lied to Stricklin about his employment status. Even though appellant attended parenting classes, the parent educator, Shelly Falkenberg, testified that he missed 18 of those classes and failed to take the post test. More importantly, she stated that his progress in understanding and learning parenting skills was "minimal." As summed up by appellant's LCCS caseworker, Andrew Waite, appellant still has anger management issues, he has a history of being able to keep a job for only short periods, and he is still living in a high risk relationship thereby creating a high risk environment for Dylan.
{¶ 15} With regard to Dylan, Waite stated: "He's doing very well there [in his foster home/relative placement]. When he got placed there he had lots of * * * developmental delays, gross motor [and] fine motor skills, and his speech. He's made a lot of progress. * * * and he's doing very well developmentally now." Both Waite and Dylan's guardian ad litem were of the opinion that it would be in Dylan's best interest to award permanent custody to LCCS.
{¶ 16} Appellant's first proposed assignment of error argues that the trial court erred in qualifying Shelly Falkenberg as an early child development and parent educator expert.
{¶ 17} A person may be qualified as an expert witness if the proponent of such witness can establish that the witness has knowledge of scientific, technical or other such specialized nature. McConnell v. Budget Inns of Am. (1998), 129 Ohio App.3d 615, 624. This witness may be qualified as an expert based upon special knowledge, skill, experience, training, or education. Id. at 625. The determination of whether a witness is qualified to testify as an expert and to give an opinion on a particular subject rests within the sound discretion of a trial court. Joyce-Couch v. DeSilva (1991), 77 Ohio App.3d 278, 284. Accordingly, a trial court's ruling excluding or including an expert's testimony will not be reversed in the absence of an abuse of discretion. Id.; Fugett v. Harris (1995), 107 Ohio App.3d 415, 419. An abuse of discretion connotes that the trial court's attitude in reaching its decision was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
{¶ 18} Here, LCCS asked that Falkenberg, a certified parenting educator, be qualified as an expert in parenting instruction and parenting skills. The trial court then allowed the parties' attorneys to voir dire this witness as to her experience and knowledge. The record discloses that Falkenberg is a LPN with 25 years of experience in evaluating and teaching parenting skills. To obtain certification, she was required to take courses in "child development, brain development, interactions, parents' conceptions of their children's development and developmental assessments." She was also required to have "a lot of" hands on experience with children before she could be certified. The record also establishes that Falkenberg participated in updated courses since her certification, including 10 years of training experience in the Help Me Grow Program. Based on the foregoing, we cannot say that the trial court abused its discretion in qualifying Falkenberg as an expert in her field. Accordingly, appellant's first proposed assignment of error lacks arguable merit.
{¶ 19} Appellant's second proposed assignment of error asserts that LCCS failed to comply with R.C. 2151.412 as to his initial and amended case plans. Appellant specifically refers to an alleged February 7, 2001 amended case plan as it relates to the original case plan filed on February 21, 2001. Initially, we note that there is no case plan bearing a filing date of February 7, 2001 in the record of this cause. Further, a review of the case plans filed in this cause shows that LCCS complied with R.C. 2151.412. Therefore, appellant's second proposed assignment of error lacks arguable merit.
{¶ 20} Likewise, appellant's third proposed assignment of error presents no arguable issue. In that assignment, appellant maintains that he received ineffective assistance of appointed trial counsel.
{¶ 21} The right to counsel, guaranteed in juvenile proceedings by R.C. 2151.352 and by Juv.R. 4, includes the right to the effective assistance of counsel. In re Heston (1998), 129 Ohio App.3d 825, 827; Jones v. Lucas Cty. Children Serv. Bd. (1988), 46 Ohio App.3d 85. "Where the proceeding contemplates the loss of parents' `essential' and `basic' civil rights to raise their children, * * * the test for ineffective assistance of counsel used in criminal cases is equally applicable to actions seeking to force the permanent, involuntary termination of parental custody." In re Heston, 129 Ohio App.3d at 827. See, also, Jones v. Lucas Cty. Children Serv. Bd., 46 Ohio App.3d at 86. Therefore, in order to prevail on a claim of ineffective assistance of counsel, appellant must show that counsel's performance fell below an objective standard of reasonableness and that prejudice arose from such performance. State v. Reynolds (1998), 80 Ohio St.3d 670, 674, citing Strickland v. Washington (1984), 466 U.S. 668, 687.
{¶ 22} In the present case, appellant fails to point out any respect in which his appointed counsel failed to fulfill her duty to her client and the manner in which this alleged failure prejudiced his cause. Additionally, our independent review of the record fails to disclose that appointed trial counsel's performance fell below a standard of reasonableness. For this reason, appellant's third proposed assignment of error has no merit.
{¶ 23} In his fourth proposed assignment of error, appellant maintains that the trial court's judgment is against the manifest weight of the evidence.
{¶ 24} The law necessary to the resolution of appellant's sole assignment of error is found in R.C. Chapter 2151.414, as effective on October 5, 2000. As applicable to this cause, R.C. 2151.414(B)(1) provides that a court may grant permanent custody of a child to, among others, a public services agency if the court determines, by clear and convincing evidence offered at the custody hearing, that it is in the best interest of the child and that the child cannot be placed with either of his or her parents within a reasonable time or should not be placed with his or her parents. R.C. 2151.414(B)(1)(a). In determining the best interest of the child, a trial court is required to consider any relevant factors listed in R.C. 2151.414(D)[3] .
{¶ 25} Clear and convincing evidence is more than a mere preponderance of the evidence. Rather, a petitioner must prove each of its allegations by producing "in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
{¶ 26} The juvenile court determined that clear and convincing evidence demonstrated that (1) despite reasonable case planning and diligent efforts by LCCS to assist appellant in relieving the problems that initially caused Dylan to be placed outside the home, appellant failed continuously and repeatedly to substantially remedy those conditions. See R.C. 2152.414(E)(1); (2) appellant was unwilling to provide food, clothing, shelter, and other basic necessities for his son. See R.C. 2151.414(E)(14); and (3) appellant demonstrated a lack of commitment toward Dylan by failing to regularly support, visit, or communicate with him when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child; causing his son to be placed outside his home. The court therefore entered the requisite finding that Dylan could not be placed with appellant within a reasonable time or should not be placed with appellant. For the following reasons, we find no error in the juvenile court's findings.
{¶ 27} The facts of this cause, as cited above, constitute clear and convincing evidence that the condition named in R.C. 2151.414(E)(1) exists. Appellant's inability to maintain steady employment, to find independent housing, to end his unstable relationship with Dylan's mother for the sake of his child, and to achieve more than minimal parenting skills demonstrate that, despite the more than reasonable efforts of the LCCS to aid appellant in remedying the conditions that caused Dylan's removal from his home, appellant continuously and repeatedly failed to remedy those conditions.
{¶ 28} Furthermore, clear and convincing evidence offered at the hearing on this matter, as well as the report of Dylan's guardian ad litem, establish that it would be in the best interest of Dylan to be placed in the permanent custody of LCCS.
{¶ 29} Accordingly, appellant's fourth proposed assignment of error lacks merit.
{¶ 30} Appellant's fifth and final proposed assignment of error states that LCCS failed to make reasonable efforts to make it possible to return Dylan to his father's care.
{¶ 31} LCCS was required to exercise reasonable efforts to make it possible for Dylan to return safely home. R.C. 2151.419(A)(1). At a permanent custody hearing, the agency seeking custody has the burden of proving it made those efforts. Id. If the trial court makes a determination that these efforts were properly made, it is required in its written finding of facts to "briefly describe * * * the relevant services provided by the agency to the family of the child and why those services did not * * * enable the child to return safely home." R.C.2151.419(B)(1).
{¶ 32} In the case before us, clear and convincing evidence of all of the services offered to appellant was presented at trial. The trial court specifically listed these services in its judgment entry and made an express determination that LCCS made reasonable efforts to prevent the need for the removal of Dylan from his home and reasonable efforts to prevent the continued removal of this child from his home. Thus, the requisites of R.C. 2151.419 were met in this cause, and appellant's fifth proposed assignment of error is without merit.
{¶ 33} Upon review of the entire record of proceedings in the trial court, we find no other grounds for a meritorious appeal. Therefore, this court finds the issues raised in the Anders brief are without merit and wholly frivolous. The motion to withdraw filed by appellant's court-appointed counsel is found well-taken and is hereby granted.
{¶ 34} The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal.
JUDGMENT AFFIRMED.
Peter M. Handwork, J., Richard W. Knepper, J., Mark L. Pietrykowski, P.J., concur.
[1] Appellant was later determined to be Dylan's father.
[2] Dylan's natural mother did not appeal the judgment of the juvenile court.
[3] The listed factors are:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
"(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.