BISHOP, Appellant,

v.

OHIO BUREAU OF WORKERS' COMPENSATION et al, Appellees.

[Cite as *Bishop v. Ohio Bur. of Workers' Comp.*, 146 Ohio App.3d 772, 2001-Ohio-4274.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 01AP–169.

Decided Dec. 4, 2001.

774

Arthur C. Graves, for appellant.

Betty D. Montgomery, Attorney General, and William J. McDonald, for appellee Bureau of Workers' Compensation.

Thompson, Hine & Flory and Robert W. Myers, for appellee National Revenue Corporation.

PETREE, Judge.

{¶ 1}  Plaintiff, Alice M. Bishop, was employed by defendant National Revenue Corporation ("NRC") as a Customer Service Representative ("CSR"). Her job duties at NRC involved fielding telephone calls from clients who had hired NRC to collect on their outstanding accounts. Plaintiff worked forty hours per week on a shift she chose. She liked her co-workers and supervisor. On a typical day, plaintiff would field twenty to forty telephone calls from clients

calling for a myriad of reasons, ranging from requesting a status report of their accounts to expressing dissatisfaction with the services provided or the fees charged by NRC. While some client issues could be resolved within ten to fifteen minutes, some could take considerably longer, depending upon the nature of the problem or client request. If an issue was not resolved in a reasonable amount of time, or if the client became unreasonable, plaintiff was permitted to refer the call to a supervisor or manager for resolution. If a supervisor or manager was not available, plaintiff was permitted to inform the client that a supervisor and/or manager would return the call. Plaintiff was not permitted, however, to just "hang up" on the client. According to plaintiff, "most of the time," her job was "not stressful." Calls from "irate" clients were "not unusual" and, in fact, occurred about once a week. Plaintiff understood that statements made by irate clients were not to be taken personally.

{¶ 2} On January 24, 1996, at approximately 11 a.m., plaintiff received a telephone call from a "very irate" client. Plaintiff could not refer the call to her supervisor or manager, however, as they had both left the building for lunch. Plaintiff unsuccessfully offered to have the supervisor or manager call the client back when they returned from lunch. According to plaintiff, the client was neither threatening nor verbally abusive; however, the client "would not listen to [her]. They wouldn't take any of [her] answers into consideration. They just didn't want to hear it. But they just kept on and on and on, and there was nothing [she] could do to appease them." The call progressed over a forty-five minute period, during which time plaintiff began to feel "uncomfortable" and felt pressure in her chest. After plaintiff terminated the call, a co-worker called 911. Emergency treatment was administered, and plaintiff was then transported to a nearby hospital, where she was diagnosed as having sustained an acute inferior myocardial infarction (heart attack). She was later transported to another hospital for treatment, which revealed a ninety-nine percent blockage of her right coronary artery.

{¶ 3} On the day of her heart attack, plaintiff was fifty-five years old. She suffered from coronary artery disease, hypertension, high cholesterol, and obesity. She had a stroke in 1992, after which she quit a twenty-seven-year cigarette smoking habit.

{¶ 4} Plaintiff subsequently filed an application for payment of compensation and medical benefits with defendant Bureau of Workers' Compensation (the "bureau"). On September 2, 1997, the bureau administrator issued an order denying plaintiff's claim on the grounds that her alleged condition predated the injury date and no causal relationship was established. Upon plaintiff's appeal, a hearing was held before a district hearing officer ("DHO") on September 29, 1997. The DHO issued a decision vacating the administrator's order and allowing

plaintiff's claim for the condition of "aggravation of pre-existing atherosclerotic coronary artery disease" with an injury date of January 24, 1996.

{¶ 5}   Both NRC and the bureau appealed the DHO's order, and on November 4, 1997, a staff hearing officer ("SHO") issued an order disallowing plaintiff's claim.  Plaintiff's appeal from the SHO's order was refused by the Industrial Commission ("commission").

{¶ 6}   Plaintiff subsequently appealed to the Franklin County Court of Common Pleas, seeking a judgment that she be entitled to participate in the Workers' Compensation Fund.  The matter came on for trial before a jury over two days in November 2000.  The jury found that plaintiff was not entitled to participate in the fund for the condition of myocardial infarction.  In so finding, the jury answered "no" to two interrogatories: (1) "Was the stress experienced by Alice Bishop on January 24, 1996, greater than that to which all workers are occasionally subjected?" and (2) "Was Alice Bishop's telephone call with a client of the National Revenue Corporation a direct and proximate cause of the heart attack that she experienced on January 24, 1996?"  The trial court filed a judgment entry on January 10, 2001, from which plaintiff has timely appealed, advancing the following five assignments of error:

{¶ 7}   "[1.] The trial court erred in excluding from testimony the opinion of plaintiff's expert witness, Dr. Charles V. Mattingly, that the stress experienced by the plaintiff causing her myocardial infarction was greater emotional strain or tension that that to which all workers are occasionally subjected.

{¶ 8}   "[2.] The trial court erred in excluding from evidence a medical review report by Dr. Nancy Vaughan commissioned by the Bureau of Workers' Compensation together with cross-examination testimony upon that review.

{¶ 9}   "[3.] The trial court erred in excluding from evidence cross-examination testimony of defendant's expert medical witness relating to opinions contained in three medical reports submitted to him for review by the defendant.

{¶ 10}   "[4.] The trial court erred in excluding from evidence plaintiff's testimony that she had read and corrected her deposition.

{¶ 11}   "[5.] The trial court erred in excluding from evidence a job description document filed by a representative of the employer at a hearing before the Industrial Commission."

{¶ 12}   Plaintiff's claim for workers' compensation benefits is premised on the contention that her heart attack resulted from a work-related "injury" as that term is defined in R.C. 4123.01(C).  In *Ryan v. Connor* (1986), 28 Ohio St.3d 406, 28 OBR 462, 503 N.E.2d 1379, paragraph one of the syllabus, the Supreme Court of Ohio held that "[a] physical injury occasioned solely by mental or

emotional stress, received in the course of, and arising out of, an injured employee's employment, is compensable under R.C. 4123.01(C)." The court established a two-prong test to determine whether a stress-related injury is compensable. The first prong is set forth in paragraph two of the syllabus, wherein the court held: "[I]n order for an injury occasioned solely by mental or emotional stress to be compensable, the claimant must show that the injury resulted from greater emotional strain or tension than that to which all workers are occasionally subjected." In other words, the injury must result from "unusual" workplace stress. *Small v. Defiance Pub. Library* (1993), 85 Ohio App.3d 583, 587, 620 N.E.2d 879. When considering whether work-related stress is "unusual," a court must view the stress from an objective standpoint rather than from the position of the injured worker. Id. The test is an objective one, focusing on the stress experienced by all workers as a whole, not just on workers in a particular profession or occupation. Id. To satisfy this test, the claimant must distinguish the job stress at issue from the normal, everyday stress that all workers experience from time to time. The test relates to the stress itself, not to the worker's individualized or subjective response to the stress. Id.

{¶ 13} The *Ryan* court set forth the second prong of the test as follows: "Once a claimant has met this first test, he still must establish that the stress to which he * * * was subjected in his employment was, in fact, the medical cause of his injury." *Ryan,* supra, at 409–410, 28 OBR 462, 503 N.E.2d 1379. The claimant must demonstrate a "substantial causal relationship between the stress and the injury for which compensation is sought." Id. at 410, 28 OBR 462, 503 N.E.2d 1379. This component focuses upon the claimant's subjective response to the stress. *Small,* supra, at 587, 620 N.E.2d 879. In general, the causal-relationship test poses a factual question and therefore is best left to medical experts and the trier of fact. *Ryan,* supra, at 410, 28 OBR 462, 503 N.E.2d 1379.

{¶ 14} Having set forth the pertinent law governing plaintiff's claim, we now turn to plaintiff's assignments of error, all of which concern evidentiary rulings made by the trial court. Accordingly, we must first set forth the standard of review with regard to the admission of evidence. "The admission of evidence is generally within the sound discretion of the trial court, and a reviewing court may reverse only upon the showing of an abuse of that discretion." *Peters v. Ohio State Lottery Comm.* (1992), 63 Ohio St.3d 296, 299, 587 N.E.2d 290. "Abuse of discretion" connotes more than an error of law or judgment. *Rigby v. Lake Cty.* (1991), 58 Ohio St.3d 269, 271, 569 N.E.2d 1056. To warrant reversal, therefore, the trial court's discretionary evidentiary ruling must be unreasonable, arbitrary, or unconscionable. Id.

{¶ 15} By the first assignment of error, plaintiff contends that the trial court erred in excluding the opinion testimony of her expert witness, Dr. Charles V. Mattingly, on the issue of whether her heart attack resulted from greater emotional strain or tension than that to which all workers are occasionally subjected.

{¶ 16} Dr. Mattingly testified that he has been licensed to practice internal medicine and cardiology in Ohio for twenty-eight years and is board certified in internal medicine, but not cardiology. He has been retired from active practice since 1998. While in active practice, he routinely advised patients as to the risk factors for heart disease and rendered opinions with regard to work-related cardiovascular problems.

{¶ 17} During plaintiff's case-in-chief, plaintiff's counsel inquired of the court as to whether he could ask Dr. Mattingly's opinion as to whether or not plaintiff's stress was greater than that to which all workers are occasionally subjected. The trial court responded:

{¶ 18} "I am not going to permit that. He has not been qualified as having any further expertise. Quite frankly, I think this is a matter for this jury to decide based upon whatever evidence there is, and I don't see that he has been qualified as an expert with regard to those issues."

{¶ 19} Thereafter, the trial court agreed with plaintiff's counsel's request that he be given the opportunity to qualify the doctor outside the presence of the jury. The testimony proffered by Dr. Mattingly established that approximately twenty percent of the cardiology patients he had treated over the course of his career had been treated for work-related stress. He further testified that certain occupations were more stressful than others; however, he testified that he had not reviewed any studies regarding work-related stress in the customer service industry. When asked his opinion as to whether the stress described by plaintiff regarding the telephone call of January 24, 1996, was greater than that to which all workers are occasionally subjected, he stated:

{¶ 20} "The stress that took place for [plaintiff] was not ordinary. It was unusual in its presentation. It was prolonged at least 40 to 50 minutes in duration. It was threatening and hostile. There was no alleviation for her at that time.

{¶ 21} "The knowledge that I have, there were no stress-relieving factors. Her supervisor was not available. This unusual, unusual situation was the causal relationship of her injury, the acute myocardial infarction. It took place substantially sooner than it would have occurred under ordinary circumstances."

{¶ 22} When again asked his opinion as to whether the stress suffered by plaintiff was greater than that to which all workers are occasionally subjected, Dr. Mattingly responded:

{¶ 23} "The heart attack of January 24th certainly was aggravated and accelerated by her acute stress, and this played a significant if not the major role in her cardiac problem or heart attack."

{¶ 24} After plaintiff's counsel posed the question a third time, Dr. Mattingly opined: "[I]t was greater, in my opinion." When asked to explain the basis of his opinion, he stated: "[I]t was prolonged. It was excessive. There was no alleviation. There was no supervisor to help out, and it was very intense. It was the precipitating event." Thereafter, plaintiff's counsel asked how plaintiff's stress compared to the type of stress that workers usually experience. Dr. Mattingly responded: "It would appear it was highly unusual, and I have stated that previously."

{¶ 25} After the proffered testimony, the trial court ruled that it would not permit counsel to ask Dr. Mattingly his opinion as to whether plaintiff's stress was greater than that experienced by other workers, stating:

{¶ 26} "I am not going to permit the question. I think that, quite clearly, the issue that this jury has to decide is whether this mental or emotional stress is greater than that to which—counsel has raised the question, greater than that stress to which all workers are occasionally subjected.

{¶ 27} "I do not doubt the doctor's qualifications with regard to treating individuals for heart conditions that are in stressful jobs and his qualifications to be treating those individuals and indicating whether they need to step back from a job; but the question that's being presented here is, I think, as [plaintiff's counsel] has indicated, a comparison of the stress that plaintiff indicates she was subjected to on this occasion with other workers, and I don't think that the doctor qualifies as an expert in that area."

{¶ 28} We find no abuse of discretion in the trial court's determination. Although Evid.R. 702 permits a witness to testify as an expert if his opinion or testimony will aid the trier of fact in search of the truth, a threshold determination must first be made in accordance with Evid.R. 104(A) concerning the qualification of the witness to testify as an expert. *McConnell v. Budget Inns of Am.* (1998), 129 Ohio App.3d 615, 624, 718 N.E.2d 948. In determining the admissibility of an expert witness's testimony, the court must consider whether that witness will aid the trier of fact in search of the truth. In addition, a person may be qualified as an expert witness if the proponent of such witness can establish that the witness has knowledge of scientific, technical or other such specialized nature. Id. Such a witness may be qualified as an expert based on

special knowledge, skill, experience, training, or education. Id. at 625, 718 N.E.2d 948. "The determination of whether a witness possesses the qualifications necessary to allow his expert testimony lies within the sound discretion of the trial court." Id. Such a determination will not be reversed by an appellate court unless there is a clear showing of an abuse of discretion by the trial court. Id.

{¶ 29} In the instant case, the trial court heard both the direct and cross-examination testimony during the voir dire on Dr. Mattingly's qualifications. Although Dr. Mattingly characterized the stress as "unusual" and ultimately opined that the stress experienced by plaintiff was greater than that to which all workers are occasionally subjected, his opinion was based upon nothing more than that he had treated some of his cardiology patients for work-related stress and that certain occupations were more stressful than others. He admitted that he had not reviewed any studies regarding work-related stress of persons working in the customer service industry. Moreover, and most important, Dr. Mattingly's responses seem to have more to do with the causal relationship between the stress and the heart attack, rather than a comparison between plaintiff's stress and the stress experienced by other workers.

{¶ 30} Plaintiff's reliance on *State ex rel. Ohio Bell Tel. Co. v. Krise* (1975), 42 Ohio St.2d 247, 71 O.O.2d 226, 327 N.E.2d 756; *Pierce v. Trimble* (1995), 101 Ohio App.3d 690, 656 N.E.2d 413; *Prejean v. Euclid Bd. of Edn.* (1997), 119 Ohio App.3d 793, 696 N.E.2d 606; and *Miller v. Barry* (1992), 81 Ohio App.3d 393, 611 N.E.2d 357, is misplaced. All of these cases involved the issue of whether a nonscheduled occupational disease is compensable under R.C. 4123.68. Pursuant to R.C. 4123.68, an occupational disease is compensable when certain criteria exist:

{¶ 31} "(1) The disease is contracted in the course of employment; (2) the disease is peculiar to the claimant's employment by its causes and the characteristics of its manifestation or the conditions of the employment result in a hazard which distinguishes the employment in character from employment generally; and (3) the employment creates a risk of contracting the disease in a greater degree and in different manner than in the public generally." *Krise* at syllabus.[1]

{¶ 32} Although the courts in those cases permitted expert medical testimony to establish the three criteria, none of the cases involved challenges to the experts' qualifications to testify. Further, none of the cases involved the issue of work-place stress. Finally, unlike Dr. Mattingly, the experts actually engaged in a comparison of the claimant's risk to the risk in employment generally or the

---

1. The definition of "occupational disease" has been codified in R.C. 4123.01(F). The General Assembly deleted the phrase "peculiar to the claimant's employment" from the *Krise* syllabus.

risk to the public. We find that the trial court's decision not to permit Dr. Mattingly's opinion testimony on this issue was not unreasonable, arbitrary, or unconscionable. Accordingly, the first assignment of error is overruled.

{¶ 33} By the second assignment of error, plaintiff contends that the trial court erred in excluding a medical review report prepared by Dr. Nancy Vaughan.

{¶ 34} During the voir dire examination of Sherman Ryan, plaintiff's attorney at the administrative hearing before the bureau, Ryan was asked to identify a June 4, 1997 report prepared by Dr. Nancy Vaughan, a bureau staff physician. Ryan explained that it is the bureau's procedure to have a file referred by a claims examiner to a bureau nurse. The bureau nurse reviews the file and submits a medical question to a bureau staff physician. In the instant case, the question submitted to Dr. Vaughan was whether to "[a]pprove medical * * * allowance of claim or addition condition—Heart Attack." In a handwritten report dated June 4, 1997, Dr. Vaughan opined:

{¶ 35} "Opinion: MOI—severe emotional stress—has been associated with increased risk of cardiac ischemia according to recent article in Journal of American Medical Association. IW [sic] had severe stress @ work. Objective findings consistent with inferior wall ischemia from RCA stenosis.

{¶ 36} "MOI on DOI and findings support alleged condition of myocardial ischemia."

{¶ 37} Thereafter, the parties stipulated that the report was signed by Dr. Nancy Vaughan. Plaintiff's counsel ultimately offered the report into evidence under Evid.R. 803(8), the public records exception to the hearsay rule. The trial court refused to admit the report, stating:

{¶ 38} "If the court were to allow [this report] into evidence, I think that the Court would basically be allowing [that witness], [that individual], to provide testimony without being here in court and without being subject to proper cross-examination."

{¶ 39} An appeal from the commission pursuant to R.C. 4123.512 contemplates a full and complete de novo determination of facts and law. *Robinson v. B.O.C. Group, Gen. Motors Corp.* (1998), 81 Ohio St.3d 361, 368, 691 N.E.2d 667; *Marcum v. Barry* (1991), 76 Ohio App.3d 536, 539, 602 N.E.2d 419. The plaintiff is not limited to the record of the evidence presented to the commission but may offer evidence in the common pleas court as in any civil action. *Grant v. Ohio Dept. of Liquor Control* (1993), 86 Ohio App.3d 76, 81, 619 N.E.2d 1165. As the trier of fact, the judge or jury upon the evidence adduced at the hearing decides de novo a single issue of the plaintiff's right to participate in the fund without deference to the commission's decision. In a de novo appeal to

the common pleas court, the commission's findings become "irrelevant," and unless the parties stipulate the evidence, it is error for the common pleas court to rely upon the evidence presented before the commission. Id.

{¶ 40} Contrary to plaintiff's contention, the medical review at issue was not "properly identified" as a medical review from Dr. Vaughan. The parties did not stipulate as to the document's authenticity; rather, the parties stipulated only that the signature on the report was that of Dr. Vaughan. Furthermore, the report was not admissible even if it had been properly authenticated. The document is, at best, the opinion of a medical expert. "The admissibility of expert testimony that an event is the proximate cause is contingent upon the expression of an opinion by the expert with respect to the causative event in terms of probability." *Stinson v. England* (1994), 69 Ohio St.3d 451, 633 N.E.2d 532, paragraph one of the syllabus. The report fails to express an opinion with respect to causation sufficient to satisfy the requisite standard of probability.

{¶ 41} The cases cited by plaintiff are inapposite. In *Hurley v. Connor* (Mar. 22, 1984), Cuyahoga App. No. 47187, 1984 WL 4569, the court found no abuse of discretion in the trial court's decision to admit as rebuttal evidence the report of the plaintiff's expert witness, a physician who had prepared a report for the bureau as their independent consultant. The facts of *Hurley* differ from the facts of the instant case, however, in that the physician had already testified and been cross-examined on the report. It has been held that where a declarant is examined on the same matters that are contained in challenged hearsay statements, the admission of such statements is harmless given that the declarant was present in court and afforded an opportunity to confirm or deny the statements. *State v. Tomlinson* (1986), 33 Ohio App.3d 278, 281–282, 515 N.E.2d 963. As noted by the trial court, Dr. Vaughan did not testify at trial and, thus, was not afforded the opportunity to confirm or deny the statements made in the report.

{¶ 42} Plaintiff's reliance on *Jackson v. Natl. Gas & Oil. Co.* (1984), 12 Ohio St.3d 329, 12 OBR 428, 467 N.E.2d 533, is also misplaced. In that case, no medical report was at issue. Moreover, the challenged documents were admitted under Evid.R. 803(6) as records of regularly conducted business activity. This rule clearly does not apply to a report containing an opinion of a physician in the bureau's medical section. Accordingly, the second assignment of error is overruled.

{¶ 43} By the third assignment of error, plaintiff contends that the trial court erred in excluding from evidence the cross-examination testimony of defendants' expert medical witness, Dr. Ralph Lach, with regard to opinions contained in three medical reports submitted to him for review by defendants.

{¶ 44} Defendants offered the videotaped deposition of Dr. Lach, a board-certified internal medicine diagnostician and cardiovascular specialist, who examined plaintiff on July 21, 1997, at the request of the bureau. Dr. Lach opined to a reasonable degree of medical certainty that plaintiff's heart attack was caused by her pre-existing coronary artery disease. Dr. Lach based his opinion upon the history given by plaintiff, his examination of her, and a review of plaintiff's medical records. Dr. Lach discounted plaintiff's allegation that the stress she suffered on January 24, 1996, caused the heart attack on the basis that stress was not mentioned in the reports taken at the time and because his review of the record revealed no evidence of a "cataclysmic emotional phenomenon" sufficient to trigger a heart attack.

{¶ 45} Prior to the time Dr. Lach's cross-examination testimony was played for the jury, defense counsel filed written objections to the trial court's decision overruling objections raised by defense counsel during Dr. Lach's deposition. The testimony at issue established that Dr. Lach had reviewed three documents submitted to him as part of the administrative proceedings before the bureau: (1) a February 25, 1997 letter from plaintiff's treating physician, Dr. Mukesh R. Shah, to plaintiff's attorney, Ryan, in which he opined that the telephone call received by plaintiff on January 24, 1996, caused her heart attack; (2) a March 20, 1997 letter from plaintiff's endocrinologist, Dr. John N. Larrimer, to Ryan, in which he opined that plaintiff's pre-existing coronary artery disease was aggravated by the stress plaintiff experienced during the telephone call, which in turn precipitated the heart attack; and (3) the handwritten medical review prepared on June 4, 1997, by Dr. Vaughan. Defense counsel argued that Dr. Lach's testimony regarding the documents was inadmissible because the documents themselves were inadmissible. The court heard oral arguments on the motion, after which the court sustained the objections and ordered that Dr. Lach's testimony regarding the aforementioned documents not be played for the jury. The court further sustained defense counsel's objection to the admission of the three documents. In particular, the court stated:

{¶ 46} "But in reviewing these matters, I think that, ultimately, if the court would allow Exhibit 11 in, particularly Dr. Larrimer's letter of March 20, 1997, and Shah's letter of February 25, 1997, which is just basically one short paragraph, as Counsel has indicated—and also the document that is included with the first report of injury, the Vaughan letter."

{¶ 47} "If the court were to allow these into evidence, I think the court would basically be allowing those witnesses, those individuals, to provide testimony without being here in court and without being subject to proper cross-examination."

{¶ 48} Without any citation to authority, plaintiff argues that the trial court erred in sustaining defense counsel's objections to cross-examination testimony on the three documents and to the exclusion of the documents from evidence. We find no abuse of discretion in the trial court's decision. The documents prepared by Drs. Shah and Larrimer are merely letters sent to plaintiff's attorney at her attorney's request, which he subsequently filed with the bureau. The documents are not admissible under any exception to the hearsay rule, as they are neither statements made for the purpose of medical diagnosis or treatment under Evid.R. 803(4), nor business records under Evid.R. 803(6). The documents were not relied upon by Dr. Lach in arriving at his opinion. Further, none of the three physicians testified at trial and, thus, none were subject to cross-examination by defendants.

{¶ 49} Records or reports used in cross-examination must be properly authenticated. *Dellenbach v. Robinson* (1993), 95 Ohio App.3d 358, 367, 642 N.E.2d 638. Admission of a report containing the diagnosis or opinion of a physician other than the one testifying is not permitted. *Hytha v. Schwendeman* (1974), 40 Ohio App.2d 478, 69 O.O.2d 419, 320 N.E.2d 312. Permitting the admission of the documents and/or cross-examination testimony by Dr. Lach with regard to them would prejudice defendants, as the documents contained unsworn, conclusory statements of fact regarding the stress to which plaintiff was allegedly subjected, as well as unsworn opinions regarding the relationship of the stress to her heart attack. Accordingly, the third assignment of error is overruled.

{¶ 50} By the fourth assignment of error, plaintiff contends that the trial court erred in excluding plaintiff's testimony that she had read and corrected her discovery deposition.

{¶ 51} During cross-examination, plaintiff testified that the telephone call she received at 11 a.m. on January 24, 1996, was different from any she had experienced in her years as a CSR. Defense counsel attempted to impeach plaintiff's testimony by use of her August 1998 discovery deposition testimony, wherein she testified that the January 24, 1996 telephone call was no different from other irate telephone calls she had received from clients in the past. Defense counsel pointed out that the deposition testimony was given closer in time to the January 24, 1996 incident than was her trial testimony. Plaintiff stated that the testimony given at the deposition was truthful.

{¶ 52} On redirect examination, plaintiff testified that she was afforded the opportunity to read, review, and make additions and/or changes to the August 1998 deposition. To that end, plaintiff testified that on September 9, 1998, she completed and signed an errata sheet, adding a paragraph containing a statement that the January 24, 1996 telephone call "was worse than others I had received." Defense counsel objected on the basis that the changes and/or additions to the

deposition testimony were not made in accordance with Civ.R. 30 because plaintiff gave no reason for making the additions as required by the rule. Defense. counsel further argued that plaintiff's failure to comply with Civ.R. 30 prejudiced the defense because plaintiff's trial testimony directly contradicted her deposition testimony. The trial court sustained the objection.

{¶ 53} We find no merit to plaintiff's contention. As with other issues regarding the exclusion of evidence, a trial court's ruling on the use of the deposition of a witness is reviewed under an abuse-of-discretion standard. *Jelen v. Price* (1983), 9 Ohio App.3d 174, 175, 9 OBR 284, 458 N.E.2d 1267.

{¶ 54} Civ.R. 30(E) provides as follows:

{¶ 55} "When the testimony is fully transcribed, the deposition shall be submitted to the witness for examination and shall be read to or by the witness, unless examination and reading are waived by the witness and by the parties. Any changes in form or substance that the witness desires to make shall be entered upon the deposition by the officer with a statement of the reasons given by the witness for making them. The deposition shall then be signed by the witness, unless the parties by stipulation waive the signing or the witness is ill, cannot be found, or refuses to sign."

{¶ 56} A party seeking to invoke the privilege accorded by Civ.R. 30(E) must comply with the instructions that the rule gives for making additions and/or changes in deposition testimony. *Lugtig v. Thomas* (N.D.Ill.1981), 89 F.R.D. 639, 641 (construing analogous Fed.R.Civ.P. 30[e] ). In the instant case, the changes were made on the errata sheet appended to the transcript, not on the original deposition. Furthermore, we note that the errata sheet does not contain a statement from plaintiff setting forth the reasons for making the changes and/or additions to her testimony. As noted in *Lugtig:*

{¶ 57} "The witness who changes his testimony on a material matter between the giving of his deposition and his appearance at trial may be impeached by his former answers, and the cross-examiner and the jury are likely to be keenly interested in the reasons he changed his testimony. There is no apparent reason why the witness who changes his mind between the giving of the deposition and its transcription should stand in any better case. [Citation omitted.]

{¶ 58} "The Rule is less likely to be abused if the deponent knows that all [of] the circumstances [of] the original answers as well as the changes and the reasons will be subject to examination by the trier of fact." Id. at 642. See, also, *Holland v. Cedar Creek Mining, Inc.* (S.D.W.Va.2001), 198 F.R.D. 651, 653, wherein the court held:

{¶ 59} "The witness is also plainly bound by the rule to state specific reasons for each change. The rule is that changes must be accompanied by "the reasons given by the deponent for making them." Fed.R.Civ.P. 30(e). This court, like most courts, will insist on strict adherence to the technical requirements of Rule 30(e)."

{¶ 60} Plaintiff's citation of *Wright v. Honda of Am. Mfg., Inc.* (1995), 73 Ohio St.3d 571, 653 N.E.2d 381, is unavailing. In *Wright,* the court held at the syllabus, as follows:

{¶ 61} "When a deponent reviews his or her deposition testimony under Civ.R. 30(E) and makes changes in the form and substance of such deposition testimony, both the original testimony as well as the changes remain in the record and are to be considered by the trier of fact."

{¶ 62} There is no suggestion in *Wright* that the changes to the deposition testimony were made without total conformance to Civ.R. 30(E). Indeed, the court cited *Lugtig* to support the aforementioned proposition. "[T]he integrity of procedural rules is dependent upon consistent enforcement because the only fair and reasonable alternative thereto is complete abandonment." *Miller v. Lint* (1980), 62 Ohio St.2d 209, 215, 16 O.O.3d 244, 404 N.E.2d 752. See, also, *Creak v. Montville Plastics & Rubber, Inc.* (1988), 48 Ohio App.3d 167, 169, 548 N.E.2d 1319 (failure to comply with procedural requirement of Civ.R. 30[E] constitutes valid reason to exclude deposition testimony). Accordingly, the fourth assignment of error is overruled.

{¶ 63} By the fifth assignment of error, plaintiff contends that the trial court abused its discretion in excluding a so-called "job description" that had been filed at the bureau hearing.

{¶ 64} During his case-in-chief, plaintiff's counsel attempted to have Ann Vassalo, plaintiff's supervisor, identify a document entitled "Criteria for Several Demanding Functions of Customer Service." Vassalo testified that she could not definitively identify the document as one she had prepared. Thereafter, defense counsel objected to any further questioning on the document, arguing that it had not been properly authenticated concerning by whom or when it was prepared and whether it applied to the period of time that plaintiff worked for NRC. Citing Vassalo's testimony, the trial court sustained defense counsel's objection on the ground that the document had not been authenticated.

{¶ 65} Thereafter, plaintiff's counsel attempted to have attorney Ryan authenticate the document. To that end, the trial court permitted counsel to conduct a voir dire examination of Ryan, which established that the document had been presented to Ryan at the November 4, 1997 commission hearing by counsel for the third-party administrator representing NRC at the hearing and was

admitted into evidence at the bureau hearing. Ryan further testified that the document was undated and contained no other information as to whether it was applicable during plaintiff's employment with NRC. Defense counsel objected to Ryan's testimony on the basis that it did not establish that the document was applicable to the relevant time period. Counsel further argued that Ryan's testimony did not serve to properly authenticate the document because Ryan was not a representative of NRC and the document was given to him by someone who had no authority to bind NRC at trial. The trial court ruled that it would permit Ryan to testify only as to how he obtained the document. Thereafter, Ryan testified before the jury only as to how he obtained the document. On cross-examination, Ryan admitted that the document was not on NRC letterhead and did not indicate a date during which it might have applied. The trial court ultimately refused to admit the document on the basis that it had not been properly authenticated.

{¶ 66} We find no abuse of discretion in the trial court's ruling, as the document was not properly authenticated. No evidence satisfied the requirement of Evid.R. 901 that the document is a "job description," as plaintiff claims it to be. Moreover, even assuming the document had been properly authenticated, no evidence established that it contained an accurate description of the CSR job, or that it applied to the relevant time period. Accordingly, the fifth assignment of error is overruled.

{¶ 67} Finally, we note that defendants have asserted in their brief that the trial court should have granted their motion for directed verdict made at the close of plaintiff's case on the ground that plaintiff failed to establish either prong of the *Ryan* test. Having overruled each of plaintiff's assignments of error, we need not address defendants' contention, as it is moot. App.R. 12(A)(1)(c).

{¶ 68} For the foregoing reasons, all five of plaintiff's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

Judgment affirmed.

BOWMAN and LAZARUS, JJ., concur.