OPINION
{¶ 1} Plaintiff-appellant Gary Claar ("Claar"), administrator of the Estate of Austin Claar ("Austin"), brings this appeal from the judgment of the Court of Common Pleas of Union County granting a directed verdict to defendant-appellee Merry Munk ("Munk").
 {¶ 2} On November 20, 2001, nine week old Austin was taken to his babysitter, Munk. Sometime during the day, Munk laid Austin down for his nap on a futon bed. Later, Munk checked on Austin and noticed that he was not breathing. She called 911 and started CPR. At 5:16, Austin was pronounced dead. An autopsy was performed and the cause of death was listed as Sudden Infant Death Syndrome ("SIDS").
 {¶ 3} On October 28, 2003, Claar individually and as administrator of Austin's estate filed a wrongful death and negligence action against Munk. A jury trial was commenced on October 12, 2004. Claar presented the evidence of various witnesses. The only expert witness to connect Munk's actions to the death was Dr. Linda Norton ("Norton"). Norton testified that she believed Munk's laying Austin on a standard twin mattress to sleep rather than a crib mattress was the proximate cause of Austin's death. Tr. 214. However, she admitted that she did not know what was meant by the term "proximate cause." Tr. 255. The trial court conducted a voir dire of Norton outside the presence of the jury and determined that Norton's theories had not been subjected to peer review or testing and had not gained general acceptance. Thus, the trial court excluded her testimony. Finding that no other evidence of proximate cause was provided, the trial court granted Munk's motion for a directed verdict. Claar appeals this judgment and raises the following assignments of error.
The trial court erred in excluding [Norton's] opinion testimony intoto.
 The trial court erred in granting a directed verdict after excluding[Norton's] opinion testimony in toto.
Munk also raises assignments of error, but filed no notice of appeal. Thus, her assignments of error are really assignments in defense of judgment pursuant to App.R. 3. Munk's assignments of error in support of judgment are as follows.
The trial court erred to prejudice of [Munk] by excluding evidence onthe issue of foreseeability of harm in this negligence case.
 The trial court erred to prejudice of [Munk] by admitting evidence onthe issue of loss-of-chance of survival outside a medical malpracticecase.
 The trial court erred to prejudice of [Munk] by excluding evidence ofother proposed mechanisms of SIDS related deaths except for the mechanismalleged by [Claar].
 The trial court erred to prejudice of [Munk] by allowing [Claar's]expert witness to rely on facts in this particular case that were notperceived by the witness or admitted at trial.
This court also notes that only a partial transcript was provided in this case. Claar chose only to provide this court with the testimony of Dr. Mary Applegate ("Applegate"), Dr. Patrick M. Fardal ("Fardal"), and Norton.
 {¶ 4} The first assignment of error claims that the trial court erred in excluding the testimony of Norton. The admission of expert testimony is governed by Evid.R. 702, which provides as follows.
A witness may testify as an expert if all of the following apply:
 (A) The witness' testimony either relates to matters beyond theknowledge or experience possessed by lay persons or dispels amisconception common among lay persons.
 (B) The witness is qualified as an expert by specialized knowledge,skill, experience, training, or education regarding the subject matter ofthe testimony.
 (C) The witness' testimony is based on reliable scientific, technical,or other specialized information.
Evid.R. 702. Opinion testimony of an expert is not admissible unless it has gained general acceptance in the scientific community. Miller v. BikeAthletic Co. (1998), 80 Ohio St.3d 607, 687 N.E.2d 735 (citing Daubertv. Merrell Dow Pharmaceuticals, Inc. (1993), 509 U.S. 579, 113 S.Ct. 2786,125 L.Ed.2d 469). "In evaluating the reliability of scientific evidence, several factors are to be considered: (1) whether the theory or technique has been tested, (2) whether it has been subjected to peer review, (3) whether there is a known or potential rate of error, and (4) whether the methodology has gained general acceptance." Id. at 611. The determination as to whether an expert's testimony is admissible lies within the sound discretion of the trial court. Bishop v. Ohio Bur. of Workers' Comp.,146 Ohio App.3d 772, 2001-Ohio-4274, 768 N.E.2d 684.
 {¶ 5} Here, the trial court excluded the testimony of Norton.
The Court finds that the doctor's testimony — and there's been notestimony that, other than, I asked her this, if it's been subjected topeer review, and she said it was held by, the opinion was held by a lot ofdoctors — I think that was the expression she used, a lot — and I don'tthink that cuts it, and there's that, and also as to whether or not themethodology had gained general acceptance, and she started, or sheended, I guess, by saying, oh, it used to be that it was, all of thesuffocation, that that was the cause of SIDS, and then it had apparentlyevolved in several other possibilities or theories, and that it's — and Ithink the way she put it, it comes back to full circle. Well, the problemis whether or not full circle is, has regained acceptance, generalacceptance, and we didn't get any testimony with regard to that, so theCourt is going to exclude her testimony.
Tr. 323. Specifically, the trial court found that Norton's testimony did not satisfy the factors set forth in Daubert for determining whether the scientific testimony is reliable. Norton, as a forensic pathologist, clearly possessed knowledge beyond the expertise of a lay person as required by Evid.R. 702(A). Norton also possessed specialized knowledge, experience, and education as required by Evid.R. 702(B). However, Evid.R. 702(C) requires that the testimony be based upon reliable scientific evidence. The trial court determined that Norton's testimony was not based upon reliable scientific evidence.
 {¶ 6} A review of the record indicates that Norton testified that she believed at least 80%, if not all, SIDS deaths were caused by suffocation. Tr. 207. This percentage is no more than an estimate and is not based upon any study. Tr. 286. She did not know whether the theory that SIDS deaths are the result of accidental suffocation was generally accepted. Id. at 288. She also testified that all other explanations were just theories being studied in order to get grants and that the only true cause was accidental suffocation. Id. at 289. Finally, she testified that she is basing her opinion on the fact that "prior to 1969, these deaths would have all been called suffocation deaths." Id. at 290-291. However, no testimony was presented that the theory in 1969 is still generally accepted. Norton's testimony is based upon a theory that has not been tested (i.e. that SIDS is really just suffocation, either accidental or deliberate), has no known potential rate of error (other than Norton's testimony that she believes she is correct), has not been subjected to peer review, and no testimony was given that this theory is still generally accepted. In contrast, Norton herself testified that there are several theories as to the cause of SIDS. However, she testified that she did not believe they were accurate.[1] Given this evidence, the trial court did not abuse its discretion in excluding the testimony of Norton for being scientifically unreliable. The first assignment of error is overruled.
 {¶ 7} In the second assignment of error Claar claims that the trial court erred in granting a directed verdict. A motion for a directed verdict challenges the sufficiency of the evidence, not the manifest weight. Wagner v. Roche Laboratories (1996), 77 Ohio St.3d 116,671 N.E.2d 252. "When the party opposing the motion has failed to produce any evidence on one or more of the essential elements of a claim, a directed verdict is appropriate." Kimble Mixer Co. v. Hall, 5th Dist No. 2003 AP 01 0003, 2005-Ohio-794 at ¶ 26.
 {¶ 8} Claar's complaint alleges that Munk was negligent and that negligence caused the wrongful death of Austin. To prove a claim of negligence, one must prove four elements: 1) the defendant had a duty; 2) the defendant breached that duty; 3) the plaintiff was injured; and 4) the breach of the duty was the proximate cause of the injury. The record is clear that Austin and Claar were injured when Austin died. Thus, the element of injury was not in debate. The record also indicates that Munk was the caretaker for Austin, so she had a duty to provide care for him. Viewing the evidence in a light most favorable to Claar, a jury could reasonably conclude that Munk had breached that duty by placing the child on a twin mattress rather in the pack and play. However, there is no evidence that this breach was the proximate cause of Austin's death. Applegate testified that although placing the child on the twin bed rather than in the pack and play was a risk factor, there was no way to determine if Austin would have died anyway. According to her testimony, SIDS is impossible to predict and has occurred in children with no risk factors. At the same time, children with multiple risk factors may not die. Applegate further testified that since there was no way to tell exactly what was responsible for Austin's death, she listed the death as SIDS, a diagnosis of exclusion. She added that Claar requested she list the cause of death as positional asphyxiation as he believed Austin had suffocated, but she refused to change her conclusion as to the cause of death. She testified that she did not believe Austin had suffocated. Although Applegate believed that Munk's decision to lay Austin on the twin mattress was a risk factor, she did not testify that it was the proximate cause of his death.[2] Without any evidence of proximate cause, an essential element of Claar's case has not been met. Thus, the trial court did not err in granting a directed verdict. The second assignment of error is overruled.
 {¶ 9} Having found no merit to Claar's assignments of error, the judgment will not be reversed. Thus, the assignments of error in support of judgment need not be addressed.
 {¶ 10} The judgment of the Court of Common Pleas of Union County is affirmed.
Judgment affirmed.
 CUPP, P.J., and ROGERS, J., concur.
[1] This court notes that there is an inherent problem with researching the cause of SIDS. SIDS, by definition, is a diagnosis of exclusion. Thus every time a cause of death is identified in a prior SIDS case, the cause of death is no longer SIDS.
[2] In fact, Applegate testified that she did not know that Austin would have lived even if he had been lying in the pack and play. Applegate testified that SIDS is a silent killer that medical science cannot predict and cannot prevent as they do not know the cause.