OPINION
{¶ 1} Plaintiffs-appellants, Linda Embry, Lisa Lowe, Tammy Coey, and Tina Dyer, appeal from a judgment of the Franklin County Court of Common Pleas granting the motion of defendants-appellees, Administrator of the Bureau of Workers' Compensation ("Administrator") and Precast Services, Inc., for summary judgment. For the following reasons, we affirm the judgment of the trial court.
 {¶ 2} The parties do not dispute that, on December 1, 1997, John Coey injured his right eye in the course of and arising out of his employment with Precast Services, Inc. A workers' compensation claim was allowed for the eye injury. On or about January 27, 1998, Mr. Coey was admitted to Bethesda Hospital in Zanesville, Ohio, for purposes of detoxification and participation in a chemical dependency treatment program. Prior to his admission at Bethesda, Mr. Coey had been excessively ingesting the pain medication that had been prescribed for him and had been purchasing drugs "on the street."[1] On February 1, 1998, Mr. Coey died at Bethesda Hospital. The supplementary medical certificate stated that the immediate cause of Mr. Coey's death was "fulminant acute pneumonia."
 {¶ 3} The instant action arose in the Franklin County Court of Common Pleas, pursuant to R.C. 4123.512, as an appeal from the Industrial Commission of Ohio's ("commission") denial of a claim for workers' compensation benefits relating to the death of Mr. Coey. Specifically, on July 11, 2002, plaintiffs filed a complaint in the trial court against defendants, seeking death benefits. Plaintiffs filed an amended complaint on July 25, 2002. Included within the amended complaint was an allegation that "the death of John Coey was the direct and proximate result of accidental injuries, by way of direct causation, dual causation or aggravation of pre-existing conditions including an aggravation of a pre-existing psychiatric condition of substance dependency." (Amended Complaint, at paragraph 4.)
 {¶ 4} On April 17, 2003, defendant Administrator filed a motion for summary judgment in favor of defendants pursuant to Civ.R. 56, based on Mr. Coey's medical records, plaintiffs' answers to interrogatories, and the depositions of Valerie J. DelMedico, M.D., and Philip F. Binkley, M.D. On May 1, 2003, plaintiffs filed a memorandum contra, which was supported by an excerpt from Larson, Larson's Workers' Compensation Law, regarding "Aggravation by Treatment"; medical records; a "Record of Hearing" before the commission; and an April 29, 2003 affidavit of Dr. DelMedico, which incorporated her March 18, 1999 report addressed to plaintiffs' then counsel.
 {¶ 5} On May 8, 2003, defendant Administrator filed a motion to strike the March 18, 1999 report of Dr. DelMedico and the "Record of Hearing" from plaintiffs' memorandum contra. On May 23, 2003, defendant Administrator filed an amended motion to strike the entire affidavit of Dr. DelMedico. In a decision and entry filed December 6, 2004, the trial court granted defendant Administrator's motion to strike the April 29, 2003 affidavit of Dr. DelMedico and the "Record of Hearing" before the commission. Also on December 6, 2004, the trial court granted defendants' motion for summary judgment.
 {¶ 6} Plaintiffs appeal and have set forth the following two assignments of error:
FIRST ASSIGNMENT OF ERROR
The trial court erred in sustaining the Motion for Summary Judgment filed by the Defendant, Bureau of Workers' Compensation.
SECOND ASSIGNMENT OF ERROR
The trial court erred in granting the Defendant-Administrator's Motion to Strike Certain Exhibits from Plaintiffs' Memorandum Contra Defendant's Motion for Summary Judgment.
 {¶ 7} Because they involve interrelated issues, we will address plaintiff's first and second assignments of error together. In their first assignment of error, plaintiffs argue that the trial court erred in granting defendant Administrator's motion for summary judgment. Plaintiffs' second assignment of error alleges that the trial court erred in granting defendant Administrator's motion to strike certain exhibits from their memorandum contra defendant's motion for summary judgment.
 {¶ 8} Appellate review of a lower court's granting of summary judgment is de novo. Mitnaul v. Fairmount Presbyterian Church,149 Ohio App.3d 769, 2002-Ohio-5833, at ¶ 27. Summary judgment is proper when a movant for summary judgment demonstrates: (1) no genuine issue of material fact exists; (2) the movant is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; State ex rel. Grady v. State Emp.Relations Bd. (1997), 78 Ohio St.3d 181, 183.
 {¶ 9} Under Civ.R. 56(C), a movant bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. Once a movant discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial.Dresher, at 293; Vahila v. Hall (1997), 77 Ohio St.3d 421; Civ.R. 56(E).
 {¶ 10} Civ.R. 56(C) provides that summary judgment is appropriate only if the "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action," show there to be no genuine issue of material fact. Civ.R. 56(C) states that no evidence may be properly considered in connection with a motion for summary judgment, "except as stated in this rule."
 {¶ 11} Civ.R. 56(E) provides, in pertinent part, as follows: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit."
 {¶ 12} In the case at bar, the trial court granted defendant Administrator's motion to strike certain exhibits from plaintiffs' memorandum contra. Absent an abuse of discretion, a trial court's decision to grant a motion to strike will not be overturned on appeal. Hicks v. Toledo Blade Co., Lucas App. No. L-03-1317, 2004-Ohio-5241, at ¶ 29, citing Early v. The ToledoBlade (1998), 130 Ohio App.3d 302, 318. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 13} Plaintiffs argue that the affidavit, and the incorporated report, of their expert witness, Dr. Valerie DelMedico, was admissible pursuant to the requirements of Civ.R. 56(E). In its decision, the trial court concluded that the affidavit of Dr. DelMedico was not in compliance with Evid.R. 705, as "not all the facts used to formulate Dr. DelMedico's opinion were disclosed as required by Evid.R. 705." (Dec. 6, 2004 "Decision and Entry Granting Defendant's Amended Motion to Strike Certain Exhibits From Plaintiffs' Memorandum Contra Filed May 8, 2004, Amended May 23, 2004," at 2.) In this appeal, plaintiffs do not specifically argue that the affidavit, which incorporated Dr. DelMedico's prior medical report, met the requirements of Evid.R. 705. Evid.R. 705 provides that an "expert may testify in terms of opinion or inference and give his reasons therefor after disclosure of the underlying facts or data. The disclosure may be in response to a hypothetical question or otherwise."
 {¶ 14} In its decision, the trial court noted that Dr. DelMedico's affidavit states that her opinions are based upon the "histories" and medical records submitted to her. Certainly, the statement indicated her reliance upon facts beyond those demonstrated in the medical records. The trial court noted that Dr. DelMedico testified at her deposition that "[s]ome of that that I referred to in this letter was the family's description of Mr. Coey's condition." (June 8, 2001 Depo. of Dr. DelMedico, at 14.) However, the trial court reasonably determined that Dr. DelMedico had not sufficiently disclosed the underlying facts or data upon which her expert opinion rested, as required under Evid.R. 705.[2] The trial court accordingly granted defendant Administrator's motion to strike the April 29, 2003 affidavit of Dr. DelMedico.
 {¶ 15} By their second assignment of error, plaintiffs also argue that the record of the proceedings before a commission hearing officer was admissible in the motion for summary judgment proceeding. Plaintiffs stress that the testimony before the commission was "sworn testimony taken before an officer of the Ohio Industrial Commission with a court reporter present." (Plaintiffs' brief, at 25-26.) Plaintiffs also assert that counsel for the employer was present and was able to cross-examine witnesses, and that counsel for the Bureau of Workers' Compensation could have attended the hearing.
 {¶ 16} In its decision, the trial court correctly recognized that the witnesses at the April 3, 2000 commission hearing were under oath. However, in reaching its decision on the matter, the trial court noted that, pursuant to R.C. 4123.10, "[t]he industrial commission shall not be bound by the usual common law or statutory rules of evidence or by any technical or formal rules of procedure." The trial court further noted that this court has stated that "[i]n a de novo appeal to the common pleas court, the [Industrial Commission's] findings become `irrelevant,' and unless the parties stipulate the evidence, it is error for the common pleas court to rely upon the evidence presented before the commission." Bishop v. Bur. of Workers'Comp. (2001), 146 Ohio App.3d 772, 776, citing Grant v. OhioDept. of Liquor Control (1993), 86 Ohio App.3d 76, 81, abrogated on other grounds, Ward v. Kroger Co., 106 Ohio St.3d 35,2005-Ohio-3560.
 {¶ 17} Considering the foregoing, including the reasoning of the trial court in reaching its determinations, we find that the trial court did not abuse its discretion in striking the April 29, 2003 affidavit of Dr. DelMedico, which incorporated her March 18, 1999 report, and the "Record of Hearing" from the commission, from plaintiffs' memorandum contra defendants' motion for summary judgment. Accordingly, we overrule plaintiffs' second assignment of error.
 {¶ 18} Regarding plaintiffs' first assignment of error, we must determine whether the trial court erred in granting defendants' motion for summary judgment, considering the record before it.
 {¶ 19} In order to receive death benefits under the Workers' Compensation Act, the dependents of a decedent must show that the employee's injury was a proximate cause of death. Murphy v.Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585, 587, citingAiken v. Indus. Comm. (1944), 143 Ohio St. 113. Thus, in order to qualify for death benefits, plaintiffs were required to show that Mr. Coey's death was proximately caused by his injury which occurred on December 1, 1997.
 {¶ 20} "The definition of and principles that govern the determination of proximate cause in the field of torts are equally applicable in workers' compensation cases." Click v. S.Ohio Correctional Facility, 152 Ohio App.3d 560, 2003-Ohio-2208, at ¶ 8, citing Oswald v. Connor (1985), 16 Ohio St.3d 38, 42, citing Aiken. "[T]he proximate cause of an event is that which in a natural and continuous sequence, unbroken by any new, independent cause, produces that event and without which that event would not have occurred." Aiken, at 117.
 {¶ 21} Defendant Administrator argues that the chain of events from Mr. Coey's eye injury to his death was broken by one or more superceding, intervening, and unforeseeable causes. "The causal connection between a defendant's act and the resulting damage may be broken by an intervening cause." Knisley v. Bray,
Franklin App. No. 03AP-887, 2004-Ohio-4553, at ¶ 11, citingQueen City Terminals, Inc. v. Gen. Am. Transp. Corp. (1995),73 Ohio St.3d 609, 619, reconsideration denied, 74 Ohio St.3d 1422. In Cascone v. Herby Kay Co. (1983), 6 Ohio St.3d 155, paragraph one of the syllabus, approving and following Thrash v.U-Drive-It Co. (1953), 158 Ohio St. 465, paragraph two of the syllabus, the Supreme Court of Ohio held:
Whether an intervening act breaks the causal connection between negligence and injury, thus relieving one of liability for his negligence, depends upon whether that intervening cause was a conscious and responsible agency which could or should have eliminated the hazard, and whether the intervening cause was reasonably foreseeable by the one who was guilty of the negligence.
 {¶ 22} Additionally, the Cascone court, at 160, quotingMudrich v. Standard Oil Co. (1950), 153 Ohio St. 31, 39, further observed:
"* * * If an injury is the natural and probable consequence of a negligent act and it is such as should have been foreseen in the light of all the attending circumstances, the injury is then the proximate result of the negligence. It is not necessary that the defendant should have anticipated the particular injury. It is sufficient that his act is likely to result in an injury to someone. Neff Lumber Co. v. First National Bank of St.Clairsville, Admr., 122 Ohio St., 302, 309, 171 N.E., 327."
 {¶ 23} Plaintiffs argue that Mr. Coey sustained psychiatric injury "as a direct and proximate result of the allowed claim for physical injuries to his eye sustained on December 1, 1997." (Plaintiffs' brief, at 9.) Plaintiffs describe the condition as an "aggravation of pre-existing substance abuse." (Id.) Plaintiffs reason that they "have submitted evidence that John Coey's death was directly and proximately caused by negligent care and treatment of medical personnel for the additional claimed condition of aggravation of pre-existing polysubstance dependency." (Id. at 21.) Plaintiffs cite to the affidavit of Dr. DelMedico to support the contention that Mr. Coey sustained an aggravation of pre-existing polysubstance dependency. However, we have determined that the trial court did not abuse its discretion in striking that affidavit, and the corresponding report, from plaintiffs' memorandum contra defendants' motion for summary judgment. Thus, there is no expert testimony that, as a direct and proximate result of the eye injury he sustained at work, Mr. Coey sustained an aggravation of a pre-existing polysubstance dependency.
 {¶ 24} Plaintiffs also cite to the "successive tortfeasor rule," as stated in Traster v. Steireich (1987),37 Ohio App.3d 99, as support for their causation argument. The Traster court stated:
The successive tortfeasor rule holds that the original tortfeasor is liable for the negligence of subsequent tortfeasors whose acts are necessitated by the original negligence. However, where the jury has returned a general verdict in favor of the defendant, an appellate court cannot reverse the judgment of the jury for failure of the trial court to charge the jury on the successive tortfeasor theory, i.e., there can be no "successive" negligence if there was no "primary" negligence.
Id. at paragraph one of the syllabus. Plaintiffs argue that the successive tortfeasor rule essentially has been applied in the workers' compensation context under the category of "subsequent aggravation of original injury." In this regard, plaintiffs assert that Mr. Coey's death was directly and proximately caused by negligent care of the condition described as aggravation of pre-existing polysubstance dependency.
 {¶ 25} Regarding plaintiffs' reference to the successive tortfeasor rule, we note that plaintiffs have not alleged that Mr. Coey was negligently treated for his eye injury. Furthermore, the trial court did not abuse its discretion in striking the affidavit and report of plaintiffs' expert who stated that Mr. Coey had sustained an aggravation of a pre-existing polysubstance dependency. Therefore, we find plaintiffs' reliance on the successive tortfeasor rule as support for their causation argument to be unpersuasive.
 {¶ 26} Defendant Administrator cites to Conley-Slowinski v.Superior Spinning Stamping Co. (1998), 128 Ohio App.3d 360, apparently for the proposition that alcohol or drug abuse cannot "link" injuries in a "chain-of-causation." In Conley-Slowinski,
the court stated that an injured worker may receive workers' compensation benefits to treat a secondary drug abuse problem. Id., citing Karavolos v. Brown Derby, Inc. (1994),99 Ohio App.3d 548. In Conley-Slowinski, there was evidence that the decedent abused alcohol prior to his injury, and that his alcoholism was aggravated by his injury. The decedent was killed in a "car/train accident," and at the time of the accident, his blood-alcohol level was "thirty-four hundredths percent of weight per volume." Id. at 362. An expert in that case attested that the decedent's "alcohol abuse secondary to his allowed injuries and depressive condition was a cause of his death." Id. Nonetheless, the Conley-Slowinski court declined to extend the chain-of-causation approach to an injury caused by alcohol or drug abuse. The court stated, "[i]n Karavolos, [the court] did allow benefits to be extended for medical conditions proximately linked to the original work-related injury. However, it did not permit the linking of injuries caused by the alcohol or drug abuse." Id. at 364. Based on this reasoning, theConley-Slowinski court essentially resolved that the claim was barred under what is now R.C. 4123.54(A)(2).[3]
 {¶ 27} Defendant Administrator further argues that it is entitled to summary judgment pursuant to Vance v. Trimble
(1996), 116 Ohio App.3d 549. In Vance, Victoria Vance sought participation in the Workers' Compensation Fund for the death of her husband, Gerald Vance. In that case, the decedent injured his hand while mowing grass for his employer, The Ohio State University ("OSU"). The decedent was taken to the OSU student health center, and the treating physician prescribed 30 Darvocet N-100 capsules, a "medium range analgesic," with instructions for decedent to take "one capsule every three, four hours for pain." Id. The decedent subsequently died from overdosing on Darvocet. Id. At the time of his death, he had approximately 18 to 20 Darvocet tablets in his system. Id.
 {¶ 28} In Vance, this court applied the rationale ofBergquist v. Med. College of Ohio (June 10, 1988), Lucas App. No. L-87-327, and determined that the plaintiff's claim for workers' compensation benefits was precluded under R.C. 4123.54
and 4123.46. This court determined that there was no evidence to suggest anything other than the fact that the decedent had overdosed on Darvocet on his own volition. The Vance majority stated, "even if we assume that [the decedent's] need for the Darvocet was triggered by a desire to alleviate the pain that resulted from the injury to his hand, [the decedent's] death was `purposely self-inflicted,' in that he voluntarily took an overdose of Darvocet." Id. at 553. Citing Bergquist, theVance majority stated that "in determining whether [the decedent's] death was accidental, the determinative factor is whether the act leading to his death was intentional. * * * [The decedent] must only have intended to take the prescribed medication in excess of the recommended dosage." Id. at 555. In a separate concurrence, Judge Tyack agreed with the result of the decision, but not the reasoning of the majority. Judge Tyack stated his determination that the decedent's "large quantity of Darvocet taken [was] the intervening cause of [the decedent's] death." Id.
 {¶ 29} Plaintiffs argue that defendant Administrator's reliance upon Vance is misplaced. Plaintiffs note that, inVance, there was no claim that the prescribed medication caused an aggravation of a pre-existing polysubstance dependency. It is true that, in the case at bar, evidence indicates that Mr. Coey had a history of drug abuse prior to his workplace injury, and inVance there was apparently no evidence of a history of drug abuse. Additionally, in Vance, the decedent's death was directly linked to his drug overdose. Here, Mr. Coey was admitted to Bethesda for drug abuse treatment, and during the drug treatment process, he died of pneumonia. Despite these factual differences, we find it significant that Mr. Coey ingested pain medication in excess of the amount prescribed, and that he used drugs that he obtained "on the street" prior to his admission at Bethesda.
 {¶ 30} Upon our review of the relevant case law as well as the facts of this case, we find that Mr. Coey's death was not proximately caused by the injury he sustained on December 1, 1997. Mr. Coey was prescribed the pain medication as a consequence of his eye injury; however, it is undisputed that he ingested the prescribed medication in excess, and that he used drugs he obtained "on the street." Mr. Coey was admitted at Bethesda in order to treat his drug problem, not his eye injury. While at Bethesda, he acquired pneumonia and died from that condition. We can only conclude that Mr. Coey's ingestion of pain medication in excess of the prescribed amount, coupled with his use of drugs he obtained on the street, constituted an intervening cause that broke the chain of causation.
 {¶ 31} Based on the foregoing, we conclude that the eye injury Mr. Coey sustained in the course and scope of his employment was not the proximate cause of his death. Therefore, we find that the trial court correctly concluded that defendants were entitled to summary judgment. Accordingly, we overrule plaintiffs' first assignment of error.
 {¶ 32} Having overruled plaintiffs' two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Sadler and Deshler, JJ., concur.
Deshler, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] The Bethesda medical records state, in part, as follows:
HISTORY: John B. Coey * * * has had a two year history of narcotic use. He has been using between 15 to 20 pills of preferably Percocet or Vicodin per day. He rarely goes beyond 24 hours without accessing more drugs, buys most of what he gets on the street. He has been unable to cut back control of use. * * * Intermittent use of alcohol, and can drink up to a 12-pack at a time usually about once a week. He denies other drugs other than Darvocet or other available opiates. The patient started using the drugs at the time of back pain. * * * 
[2] We note that Dr. DelMedico's March 18, 1999 report states that "[a]ll available evidence confirms that [Mr. Coey] had remained free of opiate use prior to requiring pain medication for [the eye injury]." Id. at 4. Dr. DelMedico's report does not reveal the basis of this finding, which is not supported by the medical records.
[3] R.C. 4123.54(A) provides as follows:
Every employee, who is injured or who contracts an occupational disease, and the dependents of each employee who is killed, or dies as the result of an occupational disease contracted in the course of employment, wherever such injury has occurred or occupational disease has been contracted, provided the same were not:
(1) Purposely self-inflicted; or
(2) Caused by the employee being intoxicated or under the influence of a controlled substance not prescribed by a physician where the intoxication or being under the influence of the controlled substance not prescribed by a physician was the proximate cause of the injury, is entitled to receive, either directly from the employee's self-insuring employer as provided in section 4123.35 of the Revised Code, or from the state insurance fund, the compensation for loss sustained on account of the injury, occupational disease, or death, and the medical, nurse, and hospital services and medicines, and the amount of funeral expenses in case of death, as are provided by this chapter.
Similarly, R.C. 4123.46 precludes compensation for injuries that are "purposely self-inflicted."